UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Nathan White,<br><br>                              Plaintiff,<br>    v.<br>TK Elevator Corporation,<br><br>                             Defendant. | Case No. 2:21-cv-01696-ART-MDC<br><br>ORDER<br><br>[ECF Nos. 57, 61, 62] |

Plaintiff White, a security guard, inhaled fumes from a malfunctioning elevator while responding to a smoke alarm in the elevator's brake room. Plaintiff sued Defendant TKE (formerly Thyssenkrupp Elevator) under strict products liability and negligence theories. (*See* ECF No. 1.) Plaintiff seeks partial summary judgment on the duty and breach elements of his negligence claims because Defendant discarded relevant elevator components. (ECF No. 61.) Defendant moved to exclude Plaintiff's elevator expert (*See* ECF Nos. 57, 58, 80) and moved for summary judgment on all claims. (ECF No. 62.)

The Court grants Plaintiff's Motion for summary judgment in part, holding that Defendant owed a duty to Plaintiff, and otherwise denies the motion. The Court denies Defendant's Motion to Exclude Plaintiff's Expert and grants Defendant's motion for summary judgment in part, dismissing Plaintiff's Failure to Warn claim and prayer for punitive damages with prejudice, and otherwise denies the motion.

**I.    FACTUAL BACKGROUND**

In September 2019, Plaintiff Nathan White, a security guard at the Cosmopolitan Hotel in Las Vegas, responded to a smoke alarm in the brake room of one of the hotel's elevators. (ECF No. 1.) He inhaled fumes and suffered serious physical harm. (*Id.*) Defendant TKE's employees recklessly destroyed the relevant elevator parts days after the incident. (ECF No. 77.)

Over ten years before, TKE had designed, manufactured, assembled, sold,

and installed the elevator, a model TAC 50-04. (ECF Nos. 57-1, 57-8.)

TKE also exclusively maintained the elevator. (ECF Nos. 61, 67-7.) TKE complied with Nevada's required annual inspection in 2019 by hiring a third-party company to inspect the elevator, including the brakes. (ECF Nos. 57-6, 67-4.) Additionally, limited records suggest that exterior parts of the elevator brake apparatus had been inspected during a service call in June 2019. (ECF Nos. 57-5, 62-10.) TKE, however, did not carry out its annual "brake teardown" maintenance in 2019, which its own internal procedures required. (ECF Nos. 67-4, 67-5.)

Both parties hired elevator experts to explain why the elevator brake malfunctioned. TKE's expert John Halpern concluded that TKE undertook reasonable care to maintain the elevator, but an unpredictable malfunction in the bushing of the brake arm allowed the brake pad to rub on the brake drum, leading to smoke in the brake room. (ECF No. 62-8.) Plaintiff's expert John Koshak concluded that the elevator brake failed because TKE failed to undertake adequate preventative maintenance. (ECF No. 61-1.) TKE moved to exclude Mr. Koshak's testimony and report. (ECF No. 57.)

## II.   MOTION TO EXCLUDE PLAINTIFF'S EXPERT

### A. Legal Standard

The party seeking to admit an expert witness must show by a preponderance that (1) the proposed expert is qualified "by knowledge, skill, experience, training, or education;" (2) the expert's scientific, technical, or other specialized knowledge will help the trier of fact understand the evidence or to determine a fact in issue; (3) the testimony is based on sufficient facts or data; (4) the testimony is the product of reliable principles and methods; and (5) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case. Fed. R. Evid. 702; *see id.*, advisory committee's note to 2023 amendment. This Court would abuse its discretion by excluding an entire expert

report containing admissible opinions solely because some of the expert's statements may be inadmissible. *Hyer v. City & Cnty. of Honolulu*, 118 F.4th 1044, 1055–56, 1059 (9th Cir. 2024).

### B. Analysis

#### 1. Qualified by Knowledge, Skill, Experience, or Training

The Court must consider whether Mr. Koshak is qualified by knowledge, skill, experience, and training to opine on this case. Fed. R. Evid. 702.

Plaintiff hired Mr. Koshak to testify about faults in Defendant's maintenance of the elevator. Though he lacks a college degree, Mr. Koshak has worked in the elevator industry for the last several decades. He belongs to the American Society of Mechanical Engineers (ASME) and the American National Standards Institute (ANSI), he is a certified elevator inspector, and he has earned various other accolades and accomplishments in the world of elevators. (ECF No. 58-2.) Mr. Koshak worked in elevator design at TKE's predecessor company while the relevant elevator was being developed. (ECF No. 57-8.) He has also been found qualified to speak as an expert by other courts. *See Kim v. Crocs, Inc.*, No. CV 16-00460 JAO-KJM, 2019 WL 923879 (D. Haw. Feb. 25, 2019) (finding Mr. Koshak qualified to speak about escalator maintenance generally); *Voeltz v. Bridge Charleston Invs. E, LLC*, No. 2:16-CV-2971-RMG, 2019 WL 1584515 (D.S.C. Apr. 12, 2019) (Mr. Koshak qualified to opine about residential elevators despite having more experience with commercial).

At the hearing, Defendant argued that while Mr. Koshak may be qualified as an expert on elevators generally, he is not an expert on the model of elevator that malfunctioned. To survive Defendant's motion to exclude Mr. Koshak, it is enough to show that Mr. Koshak is qualified to speak about elevator maintenance generally. Mr. Koshak's qualifications from professional societies, his experience working in elevator design at Defendant's predecessor company while the relevant elevator was being developed, and his qualification as an expert by other courts

persuade the Court that Mr. Koshak is qualified to opine about elevator maintenance and mechanics in this case. (*See* ECF No. 57-8.)

### 2. Helpfulness to the Jury

The Court must consider whether Plaintiff has shown that Mr. Koshak's technical knowledge about elevator maintenance and analysis of the incident at the Cosmopolitan will help the jury understand the evidence. Fed. R. Evid. 702(a). Mr. Koshak knows industry standards for elevator maintenance; he understands how to interpret elevator fault codes and maintenance logs; and he has demonstrated that he can answer questions about how elevators work. (*See* ECF No. 57-8.) The element of breach in Plaintiff's negligence case will require the jury to assess the standard of care for maintaining elevators and interpret circumstantial evidence. It also may require a high-level understanding of how elevators work. Mr. Koshak's specialized knowledge will be useful to the jury, and Plaintiff has met his burden to show as much.

### 3. Sufficient Facts or Data

The Court must consider whether Mr. Koshak's based his testimony on sufficient facts or data. Fed. R. Evid. 702(b). Mr. Koshak has used sufficient data to reach at least some of the conclusions in his report. He used relevant ASME standards in assessing elevator maintenance; and he reviewed and interpreted the fault logs, error codes, and available maintenance records from the subject elevator. (ECF No. 67-2.) Defendant argues that specific paragraphs in Mr. Koshak's report and statements from his deposition reveal that Mr. Koshak did not sufficiently consult the record for his testimony and that he lacks knowledge of important facts of the case, like which elevator arm malfunctioned. (ECF No. 57.) Plaintiff contests the salience of these errors. (*See* ECF No. 58.) The Court finds that Plaintiff has shown that Mr. Koshak used sufficient data and facts to survive a motion to exclude his testimony entirely. Defendant may later seek to exclude specific sections of Mr. Koshak's report or limit the scope of Mr. Koshak's

testimony, but it has failed to show that any alleged errors justify excluding Mr. Koshak's entire report.

### 4. Reliable Principles and Methods

The Court must consider whether Plaintiff has shown that Mr. Koshak's testimony is the product of reliable principles and methods. Fed. R. Evid. 702(c). Translation and interpretation of technical codes are reliable methods because they can be replicated and called into question by reference to authoritative sources. *See City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1046 (9th Cir. 2014) (citing *Cooper v. Brown,* 510 F.3d 870, 880–81 (9th Cir. 2007) (reliability linked to showing that method can be replicated and challenged "in an objective sense"). Mr. Koshak's testimony relies on translating and interpreting elevator fault codes, maintenance standards, maintenance logs, and the function of elevator components like the bushing—the component that seems to have failed. (*See* ECF Nos. 67-2, 62-10). Mr. Koshak's interpretation of these codes, standards, maintenance logs, as well as his explanation of how components function, can be replicated and challenged in an objective sense by reference to authoritative sources.

Additionally, Defendant challenges Mr. Koshak's "deductive" method as unreliable. Mr. Koshak's deductive method involves considering several possibilities of what caused the elevator malfunction, eliminating the ones that seem unlikely, and positing that the remaining causes are likely. This is a reliable method because it could be proved wrong. *See City of Pomona*, 750 F.3d at 1046; *see Harrah's Las Vegas, LLC v. Muckridge*, 473 P.3d 1020 (Nev. 2020) (unpublished decision finding a "failure mode analysis" based on deductive reasoning a reliable method). The Court finds that Mr. Koshak's testimony used reliable methods and principles.

//
//

5

### 5. Reliable Methods Applied to Relevant Facts

The Court finds that Plaintiff has shown that Mr. Koshak's opinion reflects an application of reliable principles and methods to the facts of the case. Fed. R. Evid. 702(d). Mr. Koshak applied his knowledge of maintenance standards and methods of translation and interpretation of technical codes to the maintenance records, fault logs, opposing expert report, and deposition testimony relevant to the case. (*See* ECF Nos. 67-2, 62-10.)

### 6. Conclusion

Having found that Mr. Koshak is qualified as an expert under FRE 702, the Court denies Defendant's Motion to Exclude Plaintiff's Expert. (ECF No. 57.) At the November 15 hearing, the parties requested an evidentiary hearing regarding both experts. To the extent the parties wish to challenge the scope of expert testimony, the Court will entertain motions in limine identified in the proposed joint pretrial order and consider at that point the need for an evidentiary hearing.

## III. CROSS MOTIONS FOR SUMMARY JUDGMENT

### A. Legal Standard

A party is entitled to summary judgment when "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). An issue is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it could affect the outcome of the case. *Id.* at 248. Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Anderson*, 477 U.S. at 250.

In considering a motion for summary judgment, the Court draws all reasonable inferences in the light most favorable to the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp.*

*v. Fischbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). The Court does not weigh the evidence, determine the truth, or make credibility determinations. *Anderson*, 477 U.S. at 249, 255.

The Court applies a burden-shifting analysis to decide a motion for summary judgment. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.' . . . In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Restaurants, Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). If the moving party satisfies its initial burden, the burden shifts to the nonmoving party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

For cross-motions for summary judgment, the Court considers each party's evidence without considering which motion provided the evidence. *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532 (9th Cir. 2011).

### B. Plaintiff's Strict Liability Claims

Preliminarily, based on representations from Plaintiff's counsel at the hearing, the Court dismisses Plaintiff's Failure to Warn claim with prejudice.

Plaintiff's other strict liability theories—design defect, manufacturing defect, and installation defect—depend on whether suit is barred by Nevada's statute of repose, NRS 11.202, and whether Plaintiff has met his burden of production.

#### 1. Statute of Repose

Nevada's statute of repose bars suits against designers and installers of "an improvement to real property more than 10 years after the substantial completion of such an improvement, for the recovery of damages" and specifically exempts

1  product defect suits. NRS 11.202(3)(b)(2) ("this section [does] not apply [to suits]
2  against . . . [a]ny person on account of a defect in a product"); *see Wise v. Bechtel*
3  *Corp.*, 766 P.2d 1317, 1318–19 (Nev. 1988) (manufacturers and material
4  suppliers not protected by statute of repose). The subject elevator was
5  constructed over ten years ago and is an improvement to real property, but
6  persuasive precedent convinces this Court that elevators are products, and
7  therefore the statute of repose does not apply. (*See* ECF No. 67.)

8  When federal courts confront a state law issue without binding precedent,
9  they must "predict how the state's highest court would decide" using guidance
10 from intermediate courts of the state and persuasive cases from other
11 jurisdictions. *See Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 872 (9th
12 Cir. 2007).

13 Although the Nevada Supreme Court has not stated whether elevators are
14 products, it has "long recognized that the doctrine of strict products liability in
15 tort is governed by the Restatement (Second) of Torts § 402A." *See Schueler v. Ad*
16 *Art, Inc.*, 472 P.3d 686, 691 (Nev. App. 2020) *(citing Rivera v. Philip Morris, Inc.,*
17 209 P.3d 271, 276 (Nev. 2009) (stating that "[t]he Restatement (Second) of
18 Torts § 402A governs strict product liability"); *Calloway v. City of Reno*, 268, 993
19 P.2d 1259, 1270–71 (Nev. 2000) *superseded by statute on other grounds as stated*
20 *in Olson v. Richard,* 89 P.3d 31, 32-33 (Nev. 2004); *see also Shoshone Coca-Cola*
21 *Bottling Co. v. Dolinski,* 420 P.2d 855, 857 (Nev. 1966) (recognizing the doctrine
22 of strict products liability, citing Dean Prosser)).

23 *Schueler* offers the most persuasive framework to predict if the Nevada
24 Supreme Court would find an elevator a product under strict products liability
25 law. 472 P.3d at 692–93; *see Safeco Ins. Co. of Am. v. Air Vent, Inc.*, 616 F. Supp.
26 3d 1079, 1084 (D. Nev. 2022) (applying *Schueler* to predict whether an attic-
27 cooling fan is a product). In *Schueler*, a maintenance worker fell 150 feet from a
28 sign that Defendant had designed, manufactured, and installed twenty years

before. 472 P.3d at 688–89. The court determined whether strict products liability applied to Defendant's sign by applying the policy objectives from the Restatement (Second) of Torts § 402A. *Id.* at 692–93 (citing *Rivera*, 209 P.3d at 276; *Calloway*, 993 P.2d at 1270). Those three policy objectives are whether applying strict liability (1) would promote safety, (2) would spread costs, and (3) would address concerns about a plaintiff's ability to prove a remote manufacturer's negligence. *Id.* at 697 (citing *Calloway*, 993 P.2d at 1271).

Applying the analysis from *Schueler*, the Court finds that the elevator in this case is a product. In *Schueler*, strict product liability promoted safety because the defendant—and not some other entity—had manufactured and installed the faulty object. *Id.* at 698. Here, TKE manufactured and installed the elevator brake. (ECF No. 57-1.) In *Schueler*, strict product liability spread costs because the defendant was in the business of making, selling, and designing commercial signs like the one that injured the plaintiff, and therefore had the incentive to develop safe products and "the occasion to spread costs." 472 P.3d at 699. Here, TKE is also in the business of making, selling, and designing elevators like the one that injured Plaintiff, and TKE is a major elevator company capable of spreading costs. (*See* ECF No. 57-8.) Finally, in *Schueler*, strict products liability addressed concerns about a plaintiff proving a remote manufacturer's negligence since the defendant was in a better position to detect problems in the supply chain than the plaintiff. *Id.* Similarly, here, TKE is in a better position to detect supply-chain or installation faults than Plaintiff. (ECF No. 57-8.) Accordingly, the Court finds that the Restatement (Second) of Torts § 402A policy objectives favor finding the elevator in this case to be a product.

Finally, Defendants' counterarguments do not convince this Court otherwise. First, the fact that an elevator may also be a real estate fixture or an improvement to real property does not mean that it cannot also be a product. *See* 472 P.3d at 699 (quoting *Matter of Eighth Jud. Dist. Asbestos Litig.*, 129 N.E.3d

1  891, 900 (N.Y. 2019) ("affixed taxable real property . . . such as elevators and
2  large turbines, have nevertheless been subject to strict products liability claims").
3  Second, none of the states in the cases cited by Defendant have a statute of repose
4  that excludes products. *See Ball v. Harnischfeger Corp.*, 877 P.2d 45 (Okla. 1994)
5  (crane falls under statute of repose), Okla. Stat. tit. 12, § 109 (does not exclude
6  products); *Homrighausen by Homrighausen v. Westinghouse Elec. Corp.*, 832 F.
7  Supp. 903 (E.D. Pa. 1993) (escalator falls under statute of repose), 42 Pa. Stat.
8  and Cons. Stat. Ann. § 5536 (does not exclude products); *Adcock v. Montgomery
9  Elevator Co.*, 654 N.E.2d 631 (Ill. App. 1995) (escalator), 735 Ill. Comp. Stat. Ann.
10 5/13-214 (does not exclude products); *Britt v. Schindler Elevator Corp.*, 637 F.
11 Supp. 734 (D.D.C. 1986) (elevator falls under statute of repose), 86 Stat. 1275,
12 Pub. L. 92-579, § 1(a) (Washington D.C.) (does not exclude products), *Hall v. Luby
13 Corp.*, 556 A.2d 1317, 1324 (N.J. Super. 1989) (elevator falls under statute of
14 repose), 1997 NJ Sess. Law Serv. Ch. 355 (Assembly 2188) (does not exclude
15 products); *Jones v. Ohio Bldg. Co.*, 447 N.E.2d 776, 780 (Ohio Com. Pl. 1982)
16 (elevator falls under statute of repose), Ohio Rev. Code Ann. § 2305.131 (does not
17 exclude products).

18     Accordingly, the Court finds that the elevator in this case is excluded from
19 Nevada's statute of repose because it is a product.

### 2. Burden of Production

21     The Court must decide if a product defect case may survive summary
22 judgment in Nevada absent direct evidence of a product defect. Defendant seeks
23 summary judgment on Plaintiff's strict liability theories by pointing out that
24 Plaintiff has provided little or no evidence of a product defect. Additionally,
25 Defendant points out that Plaintiff's expert wrote that he did not believe there
26 was a design or manufacturing defect in the elevator. (ECF No. 62-10.). Plaintiff
27 responds by pointing to Defendant's destruction of relevant evidence. (*See* ECF
28 No. 77.)

1                Nevada law permits strict liability product defect claims to reach a jury
2        without direct evidence of a product defect. In *Stackiewicz v. Nissan Motor Corp.*,
3        a driver lost control of their recently purchased car after their steering wheel
4        allegedly froze. 686 P.2d 925 (1984). Plaintiff's expert testified that they had no
5        evidence of a defect, but that such a defect could exist. *Id.* at 927-28. The Nevada
6        Supreme Court reversed the trial court's grant of summary judgment to
7        defendant, holding that "circumstantial evidence that a defect caused the
8        accident" was sufficient for the jury. *Id.* at 930. Courts have interpreted
9        *Stackiweicz* to allow a strict liability theory to go to the jury based on evidence of
10       a malfunction without direct evidence of a defect. *See Allison v. Merck & Co.*, 878
11       P.2d 948, 952 (Nev. 1994) ("lack of fitness as evidenced by the malfunction itself"
12       suffices to go to the jury); *Phillips v. C.R. Bard, Inc.*, No. 3:12-CV-00344-RCJ,
13       2014 WL 7177256, at *8 (D. Nev. 2014) (evidence of product malfunction
14       sufficient for summary judgment on whether defect existed); *Smith v. Wolf*
15       *Performance Ammunition*, No. 2:13-CV-2223 JCM-NJK, 2015 WL 2359063 (D.
16       Nev. 2015) (denying summary judgment on strict liability because of "*res ipsa*
17       *loquitor* type of inference").

18               Plaintiff's strict liability theory may proceed despite the absence of direct
19       evidence and limited circumstantial evidence. Plaintiff is unable to point to an
20       actual product defect in part because Defendant destroyed the relevant elevator
21       parts. (*See* ECF No. 77.) Plaintiff's expert states that he does not believe there
22       was a product or installation defect because the elevator ran without serious
23       issues for over ten years before this occurred. (ECF No. 67-2.) Yet Plaintiff has
24       evidence that the elevator malfunctioned, Defendant has presented no evidence
25       of an alternative explanation, and Nevada law has held that this is enough to
26       proceed. *See Allison,* 878 P.2d at 952; *Stackiewicz,* 686 P.2d at 926. Reasons to
27       doubt this theory may be presented and judged by the jury.

28               Accordingly, the Court denies Defendant's motion for summary judgment

on Plaintiff's strict liability theories.

### C. Plaintiff's Negligence Claims

The Court must decide if either party is entitled to summary judgment on the duty or breach elements of Plaintiff's negligence claim. In Nevada, negligence requires showing "(1) the existence of a duty of care, (2) breach of that duty, (3) legal causation, and (4) damages." *Sanchez ex rel. Sanchez v. Wal-Mart Stores, Inc.*, 221 P.3d 1276, 1280 (Nev. 2009) (internal citations omitted). The Court holds that Plaintiff has established that Defendant owed Plaintiff a duty. The Court also holds that both parties have submitted sufficient evidence about breach, and the facts justify a *res ipsa loquitor* theory of breach. Accordingly, the Court denies both motions for summary judgment on the remaining elements of negligence.

#### 1. Duty of Care

The Court must decide if Defendant owed a duty to Plaintiff. In Nevada, courts determine the duty element by deciding whether "such a relation exists between the parties that the community will impose a legal obligation upon one for the benefit of the other." *PHWLV, LLC v. House of CB USA, LLC*, 554 P.3d 715, 719 (Nev. 2024) (citing *Lee v. GNLV Corp.*, 22 P.3d 209, 212 (Nev. 2001)). Duty is a question of law. *Lee*, 22 P.3d at 212 (citing *Scialabba v. Brandise Const. Co., Inc.*, 921 P.2d 928, 930 (Nev. 1996)). Defendants do not contest that TKE owed a duty to Plaintiff. (ECF No. 66.) They instead argue about the scope of that duty and whether Defendant breached it.

The Court finds that Defendant owed a duty to Plaintiff. Plaintiff was a security guard charged with monitoring the elevator brake room. (ECF No. 1.) His job required him to enter the elevator brake room. (*Id.*) Defendant could reasonably foresee that a malfunction in the brake room could harm someone in Plaintiff's position, and it had a duty to take reasonable care to avoid harming Plaintiff. No triable issue of material fact remains.

12

Accordingly, the Court grants Plaintiff's motion for partial summary judgment on the question of whether TKE owed a duty of reasonable care to Plaintiff.

### 2. Breach

A plaintiff may show breach with evidence that the defendant failed to exercise reasonable care under the circumstances. *Lee*, 22 P.3d at 212. Whether a defendant took reasonable care to prevent accidents from happening is generally a question for the jury. *PHWLV*, 554 P.3d at 720 (citing *Lee*, 22 P.3d at 212).

Both parties submitted evidence to support finding or not finding that Defendant exercised reasonable care. Defendant has shown that the subject elevator passed a third-party annual inspection that tested brake health, (ECF No. 57-6), and an agent of Defendant visually inspected the outside of the brake in June 2019, several weeks before the malfunction. (ECF No. 62-10.) On the other hand, Plaintiff has shown that Defendant did not follow its own policy for brake teardown maintenance, (ECF No. 67-4), *see K-Mart Corp. v. Washington*, 1189, 866 P.2d 274, 280 (Nev. 1993) (finding "self-imposed guidelines and internal policies" relevant to deciding breach), *overruled on other grounds by Pope v. Motel 6*, 114 P.3d 277 (Nev. 2005), and recklessly destroyed the broken components after the incident. (*See* ECF No. 77.) In light of this conflicting evidence, a reasonable juror could decide that Defendant breached, or did not breach, its duty of care to properly maintain the elevator that caused Plaintiff's injuries.

Defendant argues that Plaintiff has failed to marshal any evidence that Defendant's missed maintenance could result in the malfunction that caused Plaintiff's injuries. Drawing all reasonable inferences in the light most favorable to the non-moving party, the Court disagrees. *In re Slatkin*, 525 F.3d at 810. Both experts say that the malfunction took place inside of the brake and would not

have been visible from outside. (*See* ECF No. 62-10.) The maintenance procedure that TKE skipped in March 2019 was called a "brake teardown," which involves disassembling the entire brake to inspect each component. (ECF Nos. 67-4, 57-8.) The brake teardown, therefore, could have revealed malfunctions internal to the brake that arose after the annual inspection in January 2019, and Plaintiff has also presented evidence that the annual inspection and brake teardown are qualitatively different procedures. (*See* ECF No. 62-10.) A jury may reasonably infer that the brake teardown could have detected malfunctions or indications of malfunction inside the brake had it been conducted.

Defendant also argues that maintenance conducted in January 2019 or June 2019 obviates any possibility that a jury could find Defendant breached its duty to maintain. As stated, the January 2019 inspection differed from the brake teardown, and, according to TKE policy, the brake teardown should have taken place several weeks after the annual inspection, meaning that even if the procedures were not distinct, the March 2019 inspection could have detected problems that arose after the annual inspection. Evidence on the record suggests that the June 2019 maintenance was a service call, and the record does not show that anyone disassembled or inspected the inside of the brake apparatus at this call. (ECF 67-5.) Accordingly, there is sufficient evidence from which a reasonable jury could make an inference of breach.

### 3. *Res Ipsa*

The Court must decide if Plaintiff may advance a *res ipsa loquitor* instruction for the jury as an alternative theory of negligence. In Nevada, *res ipsa loquitor* applies when "(1) the event [is] of a kind which ordinarily does not occur in the absence of someone's negligence; (2) the event [is] caused by an agency or instrumentality within the exclusive control of the defendant; and (3) the event [is not] due to any voluntary action . . . on the part of the plaintiff." *Woosley v. State Farm Ins. Co.*, 18 P.3d 317, 321 (Nev. 2001). "Once the elements . . . are

met, the burden shifts to the defendant to show that something other than its negligence caused the accident." *Id.*

Applying the test, the Court finds *res ipsa* burden-shifting is appropriate here. (1) An elevator brake releasing hazardous fumes is not the kind of event to occur without a product defect or inadequate maintenance; (2) the brake room and elevator were within the exclusive control of Defendant; (3) no voluntary action by Plaintiff produced the hazardous condition. Defendant contends that there can be no *res ipsa* instruction without expert testimony, but the Court has already found that Mr. Koshak may testify. *See supra.* Accordingly, Plaintiff may proceed with the *res ipsa* instruction.

### D. Punitive Damages

Punitive damages are available when a party is "guilty of oppression, fraud or malice, express or implied." NRS 42.005. "Oppression" is "despicable conduct that subjects a person to cruel and unjust hardship with conscious disregard of the rights of the person." NRS 42.001(4). "Fraud" is "an intentional misrepresentation, deception or concealment of a material fact known to the person with the intent to deprive another person of his or her rights or property or to otherwise injure another person." NRS 42.001(2). "Malice, express or implied" is "conduct which is intended to injure a person or despicable conduct which is engaged in with a conscious disregard of the rights or safety of others." NRS 42.001(3). Conscious disregard, which is required for oppression or malice, is "knowledge of the probable harmful consequences of a wrongful act and a willful and deliberate failure to act to avoid those consequences." NRS 42.001(1). A finding of conscious disregard requires conduct that "exceeded mere recklessness or gross negligence." *Garcia v. Awerbach*, 463 P.3d 461, 464 (Nev. 2020) (quoting *Wyeth v. Rowatt,* 244 P.3d 765, 783 (Nev. 2010)).

The record evidence fails to support punitive damages. Plaintiff has not alleged fraud. A finding of malice or oppression would require the Court to find

1  that Defendant acted with conscious disregard of Plaintiff's rights, which seems
2  inappropriate considering that Defendant attempted to maintain the elevator.
3  This Court found Defendant's spoliation of evidence to be reckless, and it
4  sanctioned Defendant for that conduct. (*See* ECF No. 77.) No evidence shows that
5  Defendant's conduct leading to Plaintiff's injuries otherwise exceeded
6  recklessness. *See Garcia,* 463. P.3d at 464.

7  Accordingly, the Court grants Defendant's Motion for Summary Judgment
8  regarding punitive damages.

### IV.  CONCLUSION

First, the Court acknowledges Defendant's compliance with local rules in their re-submission of evidence at ECF No. 80. The Court, however, instructs both parties to continue citing to the exhibits provided by Defendant in ECF No. 57 instead of ECF No. 80.

The Court denies Defendant's Motion to Exclude Plaintiff's Expert (ECF No. 57).

The Court grants Plaintiff's Motion for Summary Judgment (ECF No. 61) in part, holding that Defendant owed a duty to Plaintiff.

The Court grants Defendant's Motion for Summary Judgment (ECF No. 62) in part and dismisses with prejudice Plaintiff's Failure to Warn claim and Plaintiff's request for punitive damages.

The Court denies the cross-motions for summary judgment in all other respects.

DATED THIS 29th day of January 2025.

ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE

16